POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE CALVO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SORRENTO THERAPEUTICS, INC., HENRY JI, and MARK R. BRUNSWICK,<br><br>Defendants. | Case No.   '20 CV 1066 JAH  WVG<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Jeannette Calvo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Sorrento Therapeutics, Inc. ("Sorrento" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Sorrento securities between May 15, 2020, and May 22, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the

1

Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Sorrento was founded in 2006 and is based in San Diego, California. Sorrento is a clinical stage biopharmaceutical company that engages in the development of therapies for the treatment of cancer, autoimmune, inflammatory, and neurodegenerative diseases.

3.      On May 8, 2020, Sorrento announced a collaboration with Mount Sinai Health System ("Mount Sinai") for the purpose of "generat[ing] antibody products that would act as a 'protective shield' against SARS-CoV-2 coronavirus infection, potentially blocking and neutralizing the activity of the virus in naïve at-risk populations as well as recently infected individuals."

4.      On May 15, 2020, during pre-market hours, news sources reported that Sorrento had announced discovery of the STI-1499 antibody, which the Company described as providing "100% inhibition" of COVID-19.  That same day, Defendant Henry Ji, Ph.D. ("Ji"), founder and Chief Executive Officer ("CEO") of Sorrento referred to Sorrento's breakthrough as a "cure."

5.      On this news, Sorrento's stock price rose $4.14 per share, or 158.02%, to close at $6.76 per share on May 15, 2020, on unusually heavy trading volume. The stock continued to increase after hours and opened at $9.98 per share on May

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18, 2020, trading at a high of $10.00 per share that same day, which represented an increase of 281.68% from the May 14, 2020 closing price.

6.   Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Sorrento had overstated the prospects of the STI-1499 antibody for completely inhibiting COVID-19; (ii) the foregoing, once revealed, was foreseeably likely to have a material negative impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

7.   On May 18, 2020, during pre-market hours, *Vital Knowledge Media*, an online investor information resource, expressed skepticism over Sorrento's announcement regarding the discovery of the STI-1499 antibody, describing the Company's statements as "very disingenuous" and stating that "some of the narratives around drugs and vaccines" needed to be tempered.

8.   On this news, Sorrento's stock price fell $0.26 per share, or 3.85%, to close at $6.50 per share on May 18, 2020.

9.   On May 19, 2020, during pre-market hours, BayStreet.ca Media Corp ("BayStreet"), a leading Canadian online investor news resource, published an article entitled "Sell Sorento," which alleged that statements made by Defendant Ji

3

about the STI-1499 antibody were misleading.  Specifically, the article called into question Ji's representations to *Fox News*, wherein Ji stated "[w]e want to emphasize there is a cure" and "[t]here is a solution that works 100 percent," noting that "[a]stute investors should recognize that no true biotechnology firm would make such a claim" and "Sorrento may just want to get attention and push up the value of its stock" given that "[i]ts balance sheet is poor with a debt/equity of 2 times."  The article ultimately concluded by calling the Company's stock "speculative" and cautioned investors to "[a]void."

10.    On this news, Sorrento's stock price fell $1.08 per share, or 16.62%, to close at $5.42 per share on May 19, 2020.

11.    On May 20, 2020, Hindenburg Research ("Hindenburg") published a report (the "Hindenburg Report") doubting the validity of Sorrento's claims and calling them "sensational," "nonsense" and "too good to be true."  Hindenburg spoke with researchers at Mount Sinai who stated that Sorrento's announcement was "very hyped" and that "nothing in medicine is 100%."  The Hindenburg Report also asserted that Sorrento faced significant solvency concerns ahead of its announcement regarding a supposed COVID-19 cure, citing statements by former employees, and asserted that "Sorrento's actions are manipulative at the worst possible time and simply amount to an attempt to shamelessly profiteer off the pandemic."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

12.     However, that same day, Defendant Ji appeared on *Yahoo! Finance* to rebut the Hindenburg Report, stating that "investor[s] suspecting . . . another pump and dump" were wrong and that "when you see a virus is not infecting the healthy cell, you know you have the real deal" and "eventually the market [will] catch[] up."

13.     On the Hindenburg Report and rebuttal news, Sorrento's stock price closed at $5.70 per share on May 20, 2020, representing a decline of $4.30 per share, or 43.00%, from the Class Period high, on unusually high volume.

14.     Finally, on May 22, 2020, Hindenburg published a post on Twitter, alleging that, moments ago, Defendant Ji had "walked back his comments about having a cure," that Hindenburg "believe[s] this amounts to flagrant securities fraud when compared to his statements to Fox [News] last week," and "encourag[ed] regulators to investigate any stock sales in the interim." Specifically, Hindenburg cited comments Ji made in an interview with *BioSpace*, an online life science industry news outlet. The *BioSpace* article stated that in a May 21, 2020 interview with Defendants Ji and Mark R. Brunswick, Ph.D. ("Brunswick"), Ji "insist[ed] that they did not say it was a cure." Ji is quoted as saying:

> *[I]f* it gets through safety studies, *if* it demonstrates efficacy, it *potentially* is a cure—*if* you have the antibody in the blood and it prevents infection. After virus infection, if it blocks the virus from replicating in healthy cells continuously, you *might* have a cure. We cannot cure the late-stage patients, on ventilators, because of all the other comorbidities and complications. Those are not the job of the antibodies.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

(Emphases in original.)

15.    On this news, Sorrento's stock price closed at $5.07 per share on May 22, 2020, representing a decline of $4.93 per share, or 49.3%, from the Class Period high, on unusually high volume.

16.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

17.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

19.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are located in this Judicial District.

20.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

21.     Plaintiff, as set forth in the attached Certification, acquired Sorrento securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

22.     Defendant Sorrento is a Delaware corporation with principal executive offices located at 4955 Directors Place, San Diego, California 92121.   Sorrento common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "SRNE."

23.     Defendant Ji was Sorrento's Co-Founder, Chairman of the Board of Directors, CEO, and President at all relevant times.  He has also served as a Director of Sorrento since January 2006, and previously served as Sorrento's Chief Scientific Officer from November 2008 to September 2012.

24.     Defendant Brunswick was the Vice President of Regulatory Affairs and Quality of Sorrento at all relevant times.

25.     Defendants Ji and Brunswick are sometimes referred to herein collectively as the "Individual Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

26.     The Individual Defendants possessed the power and authority to control the contents of Sorrento's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Sorrento's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Sorrento, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

27.     Sorrento and the Individual Defendants are sometimes collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     Sorrento was founded in 2006 and is based in San Diego, California. Sorrento is a clinical stage biopharmaceutical company that engages in the development of therapies for the treatment of cancer, autoimmune, inflammatory, and neurodegenerative diseases.

8

29.     On May 8, 2020, Sorrento announced a collaboration with Mount Sinai for the purpose of "generat[ing] antibody products that would act as a 'protective shield' against SARS-CoV-2 coronavirus infection, potentially blocking and neutralizing the activity of the virus in naïve at-risk populations as well as recently infected individuals."

**Materially False and Misleading Statements Issued During the Class Period**

30.     The Class Period begins on May 15, 2020, when *Fox News* reported that Sorrento had made a "coronavirus antibody breakthrough," which the Company would announce in a press release later that day, citing an exclusive interview with Defendant Ji (the "*Fox News* Report").   Specifically, Sorrento claimed to have discovered the STI-1499 antibody, which it stated can provide "100% inhibition" of COVID-19.

31.     The *Fox News* Report also quoted Defendant Ji, who touted, in relevant part: "We want to emphasize there is a cure. There is a solution that works 100 percent . . . . If we have the neutralizing antibody in your body, you don't need the social distancing. You can open up a society without fear . . . . This puts its arms around the virus. It wraps around the virus and moves them out of the body . . . . This is the best solution . . . ."  Defendant Ji's statement misleadingly referred to Sorrento's research as a "cure."

9

32.     Additionally, the *Fox News* Report quoted Defendant Brunswick, who touted, in relevant part: "As soon as [the COVID-19 antibody] is infused, that patient is now immune to the disease . . . . For the length of time, the antibody is in that system. So, if we were approved [by the FDA] today, everyone who gets that antibody can go back to work and have no fear of catching COVID-19." (Alteration in original).  Defendant Brunswick's statement misleadingly conflated Sorrento's finding of 100% inhibition in an in vitro virus infection with 100% inhibition in a "patient."

33.     Later that day, Sorrento issued a press release announcing its discovery of the STI-1499 antibody, which the Company again described as providing "100% inhibition" of COVID-19 (the "May 2020 Press Release").  Specifically, that press release touted, in relevant part, that Sorrento's "anti-SARS-CoV-2 antibody, STI-1499, demonstrated 100% inhibition of SARS-CoV-2 virus infection in an in vitro virus infection experiment at a very low antibody concentration"; that "Sorrento has been diligently screening billions of antibodies" and, "[a]mong the antibodies showing neutralizing activity, one antibody stood out for its ability to completely block SARS-CoV-2 infection of healthy cells in the experiments," namely, STI-1499, which "completely neutralized the virus infectivity at a very low antibody dose, making it a prime candidate for further testing and development"; and that

10

"[i]nitial biochemical and biophysical analyses also indicate STI-1499 is a potentially strong antibody drug candidate."

34.     Additionally, the May 2020 Press Release quoted Defendant Ji, who touted, in relevant part: "Our STI-1499 antibody shows exceptional therapeutic potential and could potentially save lives following receipt of necessary regulatory approvals. We at Sorrento are working day and night to complete the steps necessary to get this product candidate approved and available to the waiting public[.]"

35.     Following this news, Sorrento's stock price rose $4.14 per share, or 158.02%, to close at $6.76 per share on May 15, 2020, on unusually heavy trading volume.  The stock continued to increase after hours and opened at $9.98 per share on May 18, 2020, trading at a high of $10.00 per share that same day, which represented an increase of 281.68% from the May 14, 2020 closing price.

36.     The statements referenced in ¶¶ 30-34 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Sorrento had overstated the prospects of the STI-1499 antibody for completely inhibiting COVID-19; (ii) the foregoing, once revealed, was foreseeably likely to have a material negative impact on the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

37.     On May 18, 2020, during pre-market hours, Vital Knowledge Media, an online investor information resource, expressed skepticism over Sorrento's announcement regarding the discovery of the STI-1499 antibody, describing the Company's statements as "very disingenuous" and stating that "some of the narratives around drugs and vaccines" needed to be tempered.

38.     On this news, Sorrento's stock price fell $0.26 per share, or 3.85%, to close at $6.50 per share on May 18, 2020.

39.     On May 19, 2020, during pre-market hours, BayStreet, a leading Canadian online investor news resource, published an article entitled "Sell Sorento," which alleged that statements made by Defendant Ji about the STI-1499 antibody were misleading.  Specifically, the article called into question Ji's representations to *Fox News*, wherein Ji stated "[w]e want to emphasize there is a cure" and "[t]here is a solution that works 100 percent," noting that "[a]stute investors should recognize that no true biotechnology firm would make such a claim" and "Sorrento may just want to get attention and push up the value of its stock" given that "[i]ts balance sheet is poor with a debt/equity of 2 times."  The article ultimately concluded by calling the Company's stock "speculative" and cautioned investors to "[a]void."

40.     On this news, Sorrento's stock price fell $1.08 per share, or 16.62%, to close at $5.42 per share on May 19, 2020.

41.     On May 20, 2020, Hindenburg published a report doubting the validity of Sorrento's claims and calling them "sensational," "nonsense" and "too good to be true."  Hindenburg spoke with researchers at Mount Sinai who stated that Sorrento's announcement was "very hyped" and that "nothing in medicine is 100%."   The Hindenburg Report also asserted that Sorrento faced significant solvency concerns ahead of its announcement regarding a supposed COVID-19 cure, citing statements by former employees, and asserted that "Sorrento's actions are manipulative at the worst possible time and simply amount to an attempt to shamelessly profiteer off the pandemic."

42.     Specifically, with respect to the comments from the researchers at Mount Sinai, which Sorrento had a collaboration agreement with, the Hindenburg Report stated, in relevant part:

> When reached via e-mail about the Fox News article, one researcher at the Department of Medicine and Microbiology at Mt. Sinai told us:
>
> "**This looks very hyped.** You need massive amounts of antibody to achieve this. This is the reason why this is not used for influenza. Too expensive, too much antibody needed. This cannot be a solution for everybody. **There are no data yet in humans**. For Ebola, there were several antibodies that worked like this one in vitro, but only a few are protective in vivo. **Bottom line, very early in development to know feasibility.**"

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A second Mt. Sinai research worker that we reached via e-mail simply told us that: **"In general terms…nothing in medicine is 100%. Nothing."**

We also communicated with Dr. Charles Rice, the Chair in Virology & Head of the Laboratory of Virology and Infectious Disease at Rockefeller University, who told us:

"I don't know the details of the Sorrento MAb but **their claims at this apparent stage of development, without clinical data, seem overstated**. **There are dozens of groups developing these antibodies and time (and appropriate tests) will tell which are most effective.** As a general solution or "cure" it is unlikely that an infused product, even if long lasting, will cover all of the bases needed to control this infection."

Finally, a PhD at the National Institute of health warned us:

"…be cognizant of the stage of the research (ex. if there is only data in vitro, which means in a petri dish)."

(Emphases in original.)

43.     Hindenburg also cited "a former C-suite [Sorrento] executive, who worked at the company for years and has followed its developments closely," who stated that, "[i]f you now identify an antibody that binds to an epitope of the viral spike protein, and you thereby inhibit that virus to bind to the ACE-2 entry receptor on the human cell and you thereby inhibit infection, *my loose estimate would be that there are literally hundreds of [research and development] groups that have something like that*" (emphasis in original).  Furthermore, the former employee "warned . . . about making such bold claims with in vitro results," stating, "you do know that when somebody has data from an agent that shows efficacy in an in vitro

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

assay – that if you then say I have now a cure, ***then this statement can only be understood narrowly* . . . "** (emphasis in original).  The former C-suite executive also stated "***I would have never in my life issued a press release where* . . . *I say we have a cure***" (emphasis in original).

44.   The Hindenburg Report also cited two other former Sorrento employees.  For example, a former Vice President of Sorrento, who worked at the Company recently for about a year, stated "I suggest extreme skepticism regarding any claims made by Sorrento."   Additionally, a former senior scientist at the Company for more than six years stated: "It is too early to really tell if it will translate in vivo. And we would have to see safety data. Also, their announced timeline seems very aggressive[.]"

45.   The Hindenburg Report also included the following quote from George Yancopoulos, Co-Founder, President, and Chief Scientific Officer of Regeneron, a company that is also researching an antibody treatment for COVID-19, which provides additional context of the stages of development of some of Sorrento's competitors in the field:

> Several companies have previously announced that they have already generated very potent anti-viral neutralizing antibodies – including our company as we announced a while back. That is only the first step, and there are many more steps to manufacture and progress such antibodies into clinical trials – I believe most accounts suggest that our company and probably one other company (Lilly) are the leaders into progressing these antibodies into clinical trials, and both of us are planning on doing this in the next few weeks. And then there are the challenges of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

successfully carrying out these clinical trials, which is also not guaranteed.

**I am not aware of any data suggesting Sorrento's single Ab is as good as the many others that had already been previously generated (such as ours or Lilly's)**, nor that they have any of the required downstream capabilities, nor that they have demonstrated any capabilities or success previously in other programs (such as the success we demonstrated with our related efforts against Ebola), and they seemingly are substantially behind the leaders at this time.

So it is very hard to seriously evaluate the Sorrento effort.

(Emphasis in original.)

46.     However, that same day, Defendant Ji appeared on *Yahoo! Finance* to rebut the Hindenburg Report, stating:

So you have the antibody that can prevent the virus infecting healthy cells. That means you're going to have a real product. If you have a real product, eventually the stock is going to be reflecting the assets you have. And we believe right now probably there's a lot of investor excited about this story. However, there is a lot of investor suspecting this is another pump and dump, which is typical, which is normal, but we don't believe that's the case. And we have working with academic collaborator with a real virus infection. And when you see a virus is not infecting the healthy cell, you know you have the real deal.

47.     The statements referenced in ¶ 46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Sorrento had overstated the prospects of the STI-1499 antibody for completely inhibiting COVID-19; (ii) the foregoing, once

16

revealed, was foreseeably likely to have a material negative impact on the Company's financial results; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

48.   On the Hindenburg Report and rebuttal news, Sorrento's stock price closed at $5.70 per share on May 20, 2020, representing a decline of $4.30 per share, or 43.00%, from the Class Period high, on unusually high volume.

49.   Finally, on May 22, 2020, Hindenburg published a post on Twitter, alleging that, moments ago, Defendant Ji had "walked back his comments about having a cure," that Hindenburg "believe[s] this amounts to flagrant securities fraud when compared to his statements to Fox [News] last week," and "encourag[ed] regulators to investigate any stock sales in the interim."  Specifically, Hindenburg cited comments Ji made in an interview with *BioSpace*, an online life science industry news outlet.  The *BioSpace* article stated that in a May 21, 2020 interview with Defendants Ji and Brunswick, Ji "insist[ed] that they did not say it was a cure." Ji is quoted as saying:

> ***[I]f*** it gets through safety studies, ***if*** it demonstrates efficacy, it ***potentially*** is a cure—***if*** you have the antibody in the blood and it prevents infection. After virus infection, if it blocks the virus from replicating in healthy cells continuously, you ***might*** have a cure. We cannot cure the late-stage patients, on ventilators, because of all the other comorbidities and complications. Those are not the job of the antibodies.

(Emphases in original.)

50.    On this news, Sorrento's stock price closed at $5.07 per share on May 22, 2020, representing a decline of $4.93 per share, or 49.3%, from the Class Period high, on unusually high volume.

51.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Sorrento securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Sorrento securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed

18

Class.   Record owners and other members of the Class may be identified from records maintained by Sorrento or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Sorrento;

- whether the Individual Defendants caused Sorrento to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

19

- whether the prices of Sorrento securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

58.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Sorrento securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Plaintiff and members of the Class purchased, acquired and/or sold Sorrento securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a

fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Sorrento securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Sorrento securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Sorrento securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Sorrento's finances and business prospects.

65.    By virtue of their positions at Sorrento, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Sorrento, the Individual Defendants had knowledge of the details of Sorrento's internal affairs.

67.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Sorrento.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Sorrento's businesses, operations, future

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Sorrento securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Sorrento's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Sorrento securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

68.     During the Class Period, Sorrento securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Sorrento securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Sorrento securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The

24

market price of Sorrento securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

71.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of Sorrento, and conducted and participated, directly and indirectly, in the conduct of Sorrento's business affairs.  Because of their senior positions, they knew the adverse non-public information about Sorrento's misstatement of income and expenses and false financial statements.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Sorrento's financial condition and results of operations, and to correct promptly any public statements issued by Sorrento which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Sorrento disseminated in the marketplace during the Class Period concerning Sorrento's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Sorrento to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Sorrento within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Sorrento securities.

75.     Each of the Individual Defendants, therefore, acted as a controlling person of Sorrento.  By reason of their senior management positions and/or being directors of Sorrento, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Sorrento to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised

control over the general operations of Sorrento and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Sorrento.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 11, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES
LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES
LAWS